UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Paul Arthur Woolner and                                    Case No.: 13-57269-wsd
Susan Malmer Woolner,                                      Chapter 7
                                                           Hon. Walter Shapero

        Debtors

_____/

## OPINION DENYING DEBTORS' MOTION FOR RECONSIDERATION

Debtors timely amended their Schedule C and claimed exemptions under 11 U.S.C. §

522(d)(5) for a 1990 Chevrolet Corvette ZR-1 and 2013 federal and state income tax refunds,

among other items. The trustee Charles L. Wells, III ("Trustee") timely objected to Debtors'

claims of exemption, alleging that Debtors "intentionally undervalued" those assets "in bad

faith." His legal grounds for objecting were Fed. R. Bankr. P. 4003, 11 U.S.C. § 105, *In re*

*Hannigan*, 409 F.3d 480, 481-82 (1st Cir. 2005) ("Courts have held that it is permissible to deny

an amendment where the debtors had intentionally undervalued their home in bad faith."), and *In*

*re Daniels*, 270 B.R. 417, 425 (Bankr. E.D. Mich. 2001) ("Bad faith on the part of the debtor or

prejudice to creditors are other grounds justifying a bankruptcy court's disallowance of a

debtor's amended claim of exemption upon a timely filed objection to it."). Debtors' response

factually disputes the merits of the Trustee's objection. An initial hearing was held at which

Debtors raised the applicability of *Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188 (2014) ("*Siegel*")

to the situation as possibly deciding the issue in their favor as a matter of law. Debtors argued

that *Siegel* abrogated the authority of Bankruptcy Courts to deny Debtors' claims of exemption

on the basis asserted by the Trustee. *See Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984)

("Courts may still refuse to allow an amendment where the debtor has acted in bad faith or where

1

property has been concealed."). That hearing resulted in this Court's prior order, which stated in relevant part:

> [T]he Court concluding that *Law v. Siegel* is not dispositive of the present situation or fully supportive of the Debtors' arguments because, in that case, the validity of the debtor's claim of exemption was not directly contested or challenged, rather, the issue was whether the bankruptcy court had authority to "surcharge" an already allowed exemption because of the debtor's bad acts. *Id.* at 1196; this Court concluding that, notwithstanding *Law v. Siegel*, it has authority to disallow an amendment to a claim of exemption due to bad faith. *In re Rice*, 478 B.R. 275, 279 (E.D. Mich. 2012) (citing *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984)); Fed.R.Bankr.P. 1009(a); Fed.R.Bankr.P. 4003;

Dkt. 46. The order also scheduled an evidentiary hearing on the factual issues involved in the Trustee's objection. Pursuant to E.D. Mich. LBR 9024-1(a), Debtors filed a Motion for Reconsideration, alleging the Court's order was palpably defective and rearguing and providing more legal authority that *Siegel* abrogates the power of Bankruptcy Courts to deny exemptions on grounds of a debtor's bad faith or fraudulent conduct.[1]

Debtors' Motion for Reconsideration has afforded this Court an opportunity (a) to elaborate upon (and affirm) its prior reasoning as it relates to *Siegel*; and (b) to also bring into the discussion a specific provision of a Federal Rule of Bankruptcy Procedure that, at least on its face, militates against Debtors' argument, and presents a novel legal issue that was not discussed (and likely not raised) in *Siegel* or its progeny, and in doing so, brings to the discussion important policy considerations.

---

[1] E.D. Mich. LBR 9024-1(a)(3) provides in relevant part:

> Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

2

The referred to rule is Fed. R. Bankr. P. 4003(b)(2), which provides:

> *The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption.* The trustee shall deliver or mail the objection to the debtor and the debtor's attorney, and to any person filing the list of exempt property and that person's attorney.

(emphasis added). Debtors and the Trustee did not initially address the applicability or relevance of this Rule to this case until this Court (after the filing of the Motion for Reconsideration) issued an order seeking the views of the parties on that subject. Both parties filed briefs. As noted, the Trustee's position is that Debtors' undervaluation of assets in claiming the exemptions was "intentional" and "in bad faith." In this Court's view, the thusly asserted basis for the Trustee's objection is substantially synonymous with (and not meaningfully different from) the "fraudulently asserted" language in the Rule. To conclude otherwise would be an unwarranted semantic exercise. As this case has never been closed, this Rule is plainly applicable to this situation and its plain language applies exactly to this case and therefore needs to be dealt with.

In *Siegel*, the Supreme Court held that a Bankruptcy Court lacks the authority under its inherent powers of 11 U.S.C. § 105(a) to surcharge an allowed exemption for payment of administrative expenses, even where the debtor claimed the exemption through fraud. 134 S. Ct. at 1195. The sweeping language that is most quoted and most problematic as relates to the differing facts of this case is the following:

> Siegel [the Chapter 7 trustee] points out that a handful of courts have claimed authority to disallow an exemption (or to bar a debtor from amending his schedules to claim an exemption, which is much the same thing) based on the debtor's fraudulent concealment of the asset alleged to be exempt. He suggests that those decisions reflect a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct. For the reasons we have given, the Bankruptcy Code admits no such power… But federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code.

3

*Id.* at 1196-97 (internal citations omitted). Initially, taking this quoted language from *Siegel* literally, one might argue that a duly enacted existing Federal Rule of Bankruptcy Procedure that was not objected to by Congress and was approved and allowed to go into effect by the Supreme Court, is in essence and for these purposes, the legal equivalent of something that can be seen as being in the Bankruptcy Code. Subsection (b)(2) of this Rule went into effect on December 1, 2008 and its Advisory Committee Notes stated:

> Subdivision (b)(2) is added to the rule to permit the trustee to object to an exemption at any time up to one year after the closing of the case if the debtor fraudulently claimed the exemption. Extending the deadline for trustees to object to an exemption when the exemption claim has been fraudulently made will *permit the court to review and, in proper circumstances, deny improperly claimed exemptions*, thereby protecting the legitimate interests of creditors and the bankruptcy estate. However, similar to the deadline set in § 727(e) of the Code for revoking a discharge which was fraudulently obtained, an objection to an exemption that was fraudulently claimed must be filed within one year after the closing of the case. Subdivision (b)(2) extends the objection deadline only for trustees.

(emphasis added). This subdivision is a narrow and specific one, applying only to a "fraudulently asserted" claim of exemption and not to exemption objections on any other ground. That being the case, why would there have been proposed and the Supreme Court have adopted such a Rule that covers a situation with respect to which the Bankruptcy Court has no authority to adjudicate? It is true that the Rule was adopted before *Siegel* was decided. Short of any conclusion that the previously adopted Rule might be rendered invalid by the referred to language in *Siegel*, and adopting Debtors' (largely correct) view that the Rule is a procedural one that cannot create a substantive right that does not otherwise exist, there is no purpose adopting or having a Rule that governs the time and manner by which a certain kind of objection to exemptions may be pursued if, as a matter of law, the Bankruptcy Court does not have the

4

authority to adjudicate such an objection. *See* 28 U.S.C. § 2075. Courts should be able to fairly assume that a procedural rule is premised on the existence of authority of the Court involved to decide the substantive issue raised in accordance with the procedure prescribed by that rule. Until this novel issue is clarified in a binding decision involving discussion and application of that Rule, such should be deemed to be the case and some way of harmonizing or reconciling *Siegel* and the Rule ought to be found, if at all possible. At the very least, the questions should not be answered purely by implication arising out of *Siegel*, a decision that (a) does not consider the meaning or effect of the Rule because it likely was not raised, given that the debtor in that case filed his bankruptcy in 2004, well before that Rule even took effect; and (b) arguably differs materially and decisively from the facts in this case.

As to the latter (and as an independent basis for this decision), in this Court's view, there is a material and decisive difference between the Bankruptcy Court (a) not having the authority to surcharge a previously allowed and unobjected-to exemption and (b) not having the authority to disallow the exemption in the first place because it was initially claimed fraudulently or in bad faith. The distinction between the two ought to be seen as one that calls for a different result. In Bankruptcy Court, a debtor has an affirmative and paramount duty of full and truthful disclosure, which is essential to the integrity of the bankruptcy process and the successful administration of the bankruptcy estate. *See In re Colvin*, 288 B.R. 477, 479-81 (Bankr. E.D. Mich. 2003). Thus, the Bankruptcy Court's denial of an exemption asserted in bad faith has been characterized as relying on the Court's "inherent powers." *E.g.*, *In re White*, 455 B.R. 241, 246 (Bankr. M.D. Fla. 2010). Denying an exemption under these circumstances not only punishes a debtor's misconduct, it deters other debtors from engaging in similar misconduct in the future. *In re Opra*, 365 B.R. 728, 746 (Bankr. E.D. Mich. 2007). The allowance or disallowance of an exemption in

5

the first place is at the very core of the bankruptcy process and is involved in almost all individual cases. It seeks to balance the concepts of giving debtors a fresh start and preserving the legitimate interests of creditors. Exemptions determine and go to the very heart of the ultimate result of any personal bankruptcy by determining what a debtor can and cannot retain. Furthermore, to apply *Siegel* to this situation could arguably act as an open invitation for debtors to commit fraud in claiming exemptions, knowing that the Bankruptcy Court would be powerless to deny such. As a matter of policy, this is not only inappropriate, but for no apparent reason differentiates this particular situation from the other fraud inquiries under the Bankruptcy Code, which historically at least are unquestionably within the authority of the Bankruptcy Court to adjudicate. That, coupled with the very basic need for the Bankruptcy Court to maintain and enforce the integrity of the entire system, require that at the very least eliminating the authority of that Court to deal with fraud in this situation should either be as a result of (a) a clear statutory enactment or (b) specific binding decisional authority in a substantively analogous case, as opposed to the application of what needs to be seen as dictum and otherwise unwarranted. Although this Court should give due respect to the Supreme Court's dictum, in doing or not doing so, this Court is reminded of Justice Cardozo's statement on the subject of dicta when many years ago he spoke to Yale law students in a series of lectures, saying:

> I own that it is a good deal of a mystery to me how judges, of all persons in the world, should put their faith in dicta. A brief experience on the bench was enough to reveal to me all sorts of cracks and crevices and loopholes in my own opinions when picked up a few months after delivery, and reread with due contrition... But dicta are not always ticketed as such, and one does not recognize them always at a glance. There is a constant need, as every law student knows, to separate the accidental and the non-essential from the essential and inherent.

Benjamin N. Cardozo, *The Nature of the Judicial* Process 29-30 (Yale Univ. Press 1949).

Debtors have cited a number of cases that have applied the quoted language of *Siegel* to facts that are largely analogous to the facts of this case and have held or implied that Bankruptcy Courts lack the power to disallow exemptions on the grounds of the debtor's fraud or bad faith (though none of those cases have mentioned the indicated Rule or discussed its relevance or impact). *In re Baker*, 514 B.R. 860, 863-64 (E.D. Mich. 2014), *appeal docketed*, 14-2149 (6th Cir. Sept. 5, 2014); *In re Mitchell*, No. 13-14494, 2014 WL 1725819, at *8 (Bankr. N.D. Ohio Apr. 30, 2014); *In re Gutierrez*, No. 12-60444-B-7, 2014 WL 2712503, at *6 (Bankr. E.D. Cal. June 12, 2014); *In re Arellano*, 517 B.R. 228 (Bankr. S.D. Cal. 2014); *In re Scotchel*, No. 12-09, 2014 WL 4327947, at *4 (Bankr. N.D. W. Va. Aug. 28, 2014); *In re Gress*, 517 B.R. 543, 547-48 (Bankr. M.D. Pa. 2014); *In re Franklin*, 506 B.R. 765, 771-72 (Bankr. C.D. Ill. 2014); *In re Pipkins*, No. BR 13-30087DM, 2014 WL 2756552, at *7 (Bankr. N.D. Cal. June 16, 2014); *see also United States v. Ledee*, 772 F.3d 21, 29 n.10 (1st Cir. 2014). By reason of the foregoing and with due regard and respect for my judicial colleagues, this Court declines to follow their lead. The Court is accordingly denying Debtors' Motion for Reconsideration and is entering an appropriate order to that effect.

Signed on December 15, 2014

                                   /s/ Walter Shapero
                                Walter Shapero
                                United States Bankruptcy Judge